UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-CV-61533-STRAUSS

GIZELLE MOORE CURRY,

      Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

_____/

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

THIS MATTER came before the Court upon Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion") [DE 6] and Defendant's Motion for Summary Judgment ("Defendant's Motion") [DE 9]. I have reviewed both motions, Plaintiff's Reply [DE 11], and all other pertinent portions of the record. For the reasons discussed herein, Plaintiff's Motion [DE 6] will be **DENIED** and Defendant's Motion [DE 9] will be **GRANTED**.

### I.      BACKGROUND & PROCEDURAL HISTORY

On August 22, 2020, Plaintiff applied for supplemental security income ("SSI"), and on November 6, 2020, she applied for disability insurance benefits ("DIB"); in her applications, Plaintiff alleged that she became disabled in 2016. Tr. 268-81. Plaintiff's DIB and SSI claims were denied initially and upon reconsideration. *See* Tr. 108-73. Thereafter, on December 20, 2022, Plaintiff appeared with counsel for a hearing before an Administrative Law Judge ("ALJ"), at which Plaintiff and a vocational expert ("VE") testified. Tr. 55-81. On February 1, 2023, the ALJ issued a decision finding that Plaintiff was not disabled. Tr. 11-21. The Appeals Council subsequently denied Plaintiff's request for review, and thereafter, Plaintiff filed an action in this

district seeking judicial review of the Commissioner's decision denying Plaintiff's applications. *See Curry v. Commissioner of Social Security*, No. 23-cv-61074 (S.D. Fla.). In that action, the Court granted an unopposed motion to reverse the Commissioner's decision under sentence four of 42 U.S.C. § 405(g) and to remand the matter to the Commissioner. Tr. 1424-27.

Upon remand, the Appeals Council remanded the matter to the ALJ. *See* Tr. 1429-33. On April 23, 2024, the ALJ held a hearing at which Plaintiff and a (different) VE testified. Tr. 1371-87. The ALJ subsequently issued a partially favorable decision, on June 21, 2024, finding that Plaintiff established disability as of November 16, 2023, but that Plaintiff was not disabled prior to that date. Tr. 1343-60. On August 21, 2024, Plaintiff commenced the instant action seeking review of the Commissioner's decision that Plaintiff was not disabled prior to November 16, 2023.

## II.      STANDARD OF REVIEW

In reviewing claims brought under the Social Security Act, a court's role is limited. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's findings of fact must be affirmed if they are based upon "substantial evidence." *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). "Substantial evidence is . . . such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Moore*, 405 F.3d at 1211 (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). It "is something 'more than a mere scintilla, but less than a preponderance.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citation omitted). "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Id.* (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). Courts "may not decide the facts anew, reweigh the evidence, or substitute [their] judgment for that of the [Commissioner]." *Id.* (quoting *Phillips*, 357 F.3d at

1240 n.8); *Bloodsworth*, 703 F.2d at 1239.  In addition to determining whether the Commissioner's factual findings are supported by substantial evidence, courts must determine whether the ALJ applied the correct legal standards.  *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

### III.   DISCUSSION

#### A.  THE SEQUENTIAL EVALUATION

A "disability" is defined as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  In making a disability determination, "the ALJ must consider the evidence in its entirety, including: (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant . . . and (4) the claimant's age, education, and work history."  *Maffia v. Comm'r of Soc. Sec.*, 291 F. App'x 261, 262-63 (11th Cir. 2008) (quoting *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir.1972)); *see also Walden v. Schweiker*, 672 F.2d 835, 839 (11th Cir. 1982).

To arrive at a determination as to disability, the ALJ must undertake the sequential evaluation embodied in 20 C.F.R. §§ 404.1520 and 416.920.[1]  This process requires that the ALJ first determine whether the claimant is presently engaged in substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If so, a finding of "no disability" is made.

If the claimant is not engaged in such work, then the ALJ must proceed to the second step and determine whether the claimant suffers from a "severe impairment."  An impairment is severe

---

[1] 20 C.F.R. Part 404 governs DIB claims, and 20 C.F.R. Part 416 governs SSI claims.  However, the regulations for both parts – at least insofar as they apply to the issues the Court must resolve in this case – are "essentially the same."  *Theil v. Comm'r, Soc. Sec. Admin.*, No. 24-11615, 2025 WL 707863, at *1 n.1 (11th Cir. Mar. 5, 2025) (quoting *Bowen v. City of New York*, 476 U.S. 467, 470 (1986)).

if it significantly limits the claimant's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c).  If no severe impairment is found, then the ALJ will conclude that there is no disability; if a severe impairment is found, then the ALJ will proceed to the next step of the analysis.  *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

The third step requires the ALJ to determine whether the claimant's impairment meets or equals those listed in Appendix 1 of the Regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If so, the ALJ will find the claimant disabled without considering age, education, and work experience.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If not, the inquiry will proceed to the next stage.

Step four requires the ALJ to determine whether the claimant has the residual functional capacity ("RFC") to perform past relevant work.  20 C.F.R. §§ 404.1520(e), 416.920(e).  The Regulations define RFC as "the most you can still do despite your limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  This determination takes into account "all of the relevant medical and other evidence," including the claimant's own testimony and the observations of others.  20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).  The ALJ must then compare the RFC with the physical and mental demands of the claimant's past relevant work to determine whether the claimant is still capable of performing that kind of work.  If so, the claimant is found not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).

If the claimant establishes an inability to return to past relevant work, the inquiry turns to step five.  "At step five the burden of going forward shifts to the [Commissioner] 'to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.'"  *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)).  If the Commissioner points to

possible alternative employment, then the burden returns to the claimant to prove an inability to perform those jobs. *Id.* At this fifth and final step, the ALJ must resolve whether the claimant is actually capable of performing other work. *See* 20 C.F.R. §§ 404.1520(g), 404.1560(c), 416.920(g), 416.960(c).

To help evaluate whether sufficient jobs exist that can be performed given the claimant's age, education, and physical limitations, the Commissioner has promulgated Medical Vocational Guidelines. *See* 20 C.F.R. pt. 404, subpt. P, app. 2. The guidelines may apply "where a person is not doing substantial gainful activity and is prevented by a severe medically determinable impairment from doing vocationally relevant past work." 20 C.F.R. §§ 404.1569, 416.969. The guidelines are composed of detailed grids and rules, which direct a finding of disabled or not disabled based on a claimant's RFC, age, education, and previous work experience. *Walker v. Bowen*, 826 F.2d 996, 1002 (11th Cir. 1987).

Yet, the guidelines "do not cover all possible variations of factors" and are inapplicable "if one of the findings of fact about the person's vocational factors and [RFC] is not the same as the corresponding criterion of a rule." 20 C.F.R. §§ 404.1569, 416.969. Therefore, "[e]xclusive reliance on the grids is not appropriate *either* when [the] claimant is unable to perform a full range of work at a given residual functional level *or* when a claimant has non-exertional impairments that significantly limit basic work skills." *Phillips*, 357 F.3d at 1242 (citation omitted); *see also Walker*, 826 F.2d at 1002-03; *Hargis v. Sullivan*, 945 F.2d 1482, 1490 (10th Cir. 1991). Nevertheless, in such situations, the guidelines may serve as a framework to determine whether sufficient jobs exist within a claimant's range of RFC. *Hargis*, 945 F.2d at 1490. However, the Commissioner may carry his or her burden through the use of a VE when exclusive reliance on the guidelines is not appropriate. *Chaney-Everett v. Astrue*, 839 F. Supp. 2d 1291, 1299 (S.D. Fla.

2012) (citing *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989); *Walker*, 826 F.2d at 1003).  A VE provides the ALJ with a realistic appraisal of the work that a claimant is capable of performing. *Id.* (citing *Walker*, 889 F.2d at 50).

### B.  ALJ'S APPLICATION OF THE SEQUENTIAL EVALUATION

After considering the evidence, the ALJ found that Plaintiff was not disabled prior to November 16, 2023, but became disabled on that date.  Tr. 1359.  Initially, the ALJ addressed certain preliminary issues and outlined in detail the five steps of the sequential evaluation.  Tr. 1343-45.  Then, addressing the first step in the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date.  Tr. 1346.

At step two, the ALJ found that since Plaintiff's alleged disability onset date, Plaintiff had the severe impairments of "degenerative joint disease of the right knee, status-post surgical repair; degenerative disc disease of the cervical spine; degenerative disc disease of the lumbar spine; degenerative joint disease of the left hip; non-insulin dependent diabetes mellitus; peripheral neuropathy; and obesity."  Tr. 1346.  As of – but not before – November 16, 2023, the ALJ also found that Plaintiff had the severe impairment of bilateral carpal tunnel syndrome.  Tr. 1346.  In addition to addressing Plaintiff's severe impairments at step two, the ALJ found that Plaintiff's "medically determinable mental impairments of a neurocognitive disorder, depression, and anxiety, considered singularly and in combination, do not cause more than a minimal limitation in [Plaintiff's] ability to perform basic mental work activities and are therefore non-severe."  Tr. 1346.  In so finding, the ALJ noted that she considered the paragraph B criteria (the four broad areas of mental functioning).  Tr. 1346.  The ALJ assessed a "mild" limitation in all four areas. Tr. 1346-47.  Then, at step three, the ALJ found that Plaintiff did not have an impairment or

combination of impairments that met or medically equaled the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. 1348.

The ALJ next assessed Plaintiff's RFC, determining based on her consideration of the entire record that, prior to November 16, 2023, Plaintiff had the RFC:

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), though she could not climb ladders, ropes, and/or scaffolds. The claimant could occasionally climb ramps and/or stairs, as well as occasionally kneel, crouch, and/or crawl. She could frequently balance and/or stoop. The claimant could frequently reach bilaterally in all directions, as well as frequently handle and/or finger bilaterally. She could not operate a motor vehicle. The claimant had to avoid work around hazardous, moving mechanical parts and/or avoid work at unprotected heights. She could tolerate occasional exposure to extreme temperatures.

Tr. 1348.  Based upon the foregoing RFC, the ALJ found that, prior to November 16, 2023, Plaintiff could perform her past relevant work as a receptionist (as generally performed) and as a customer service representative (both as generally and actually performed).  Tr. 1357.

As of (and following) November 16, 2023, however, the ALJ found that one limitation in Plaintiff's RFC was more restrictive than it was prior to November 16, 2023 (with Plaintiff's RFC otherwise being the same).  Specifically, as of November 16, 2023, the ALJ found that Plaintiff could "frequently handle and/or finger with the non-dominant left upper extremity, though the claimant [could] only *occasionally* handle and/or finger with the dominant right upper extremity" (as indicated above, the ALJ found that Plaintiff could "*frequently* handle and/or finger *bilaterally*" prior to November 16, 2023).  Tr. 1348, 1358 (emphasis added).  The ALJ found that Plaintiff's RFC as of (and following) November 16, 2023 prevented Plaintiff from performing her past relevant work.  Tr. 1359.  Because the ALJ found that Plaintiff could not perform her past relevant work (as of November 16, 2023), the ALJ proceeded to step five, where she found that as of November 16, 2023, "a conclusion of 'disabled' is now directed by Medical-Vocational Rule 201.06."  Tr. 1359.

Therefore, the ALJ found that Plaintiff became disabled on November 16, 2023. Tr. 1359-60. However, because the ALJ found that Plaintiff could perform her past relevant work before then, the ALJ found that Plaintiff was not disabled prior to November 16, 2023. Tr. 1357-60.

## C. ANALYSIS

In her motion, Plaintiff argues that remand is warranted for several independent reasons. First, Plaintiff contends that the ALJ erred in how she classified and evaluated Plaintiff's past relevant work and Plaintiff's ability to perform her past relevant work. Second, Plaintiff contends that the ALJ erred in evaluating Plaintiff's mental impairments both at step two and when assessing Plaintiff's RFC; relatedly, Plaintiff contends that the ALJ erred in evaluating medical opinion evidence regarding Plaintiff's mental impairments. Lastly, Plaintiff contends that the Court should remand this matter for an award of benefits because had the ALJ not incorrectly found Plaintiff could perform her past relevant work prior to November 16, 2023, the Medical-Vocational Guidelines would have required a finding of disability at step five. As discussed herein, Plaintiff's first two contentions of error fail. And Plaintiff's third contention (which is not discussed further below) also fails because it is predicated on Plaintiff's argument that the ALJ erred by finding Plaintiff could perform her past relevant work prior to November 16, 2023. *Cf. Delmonte v. Comm'r, Soc. Sec. Admin.*, 585 F. App'x 774, 776 (11th Cir. 2014) ("Delmonte argues that he is disabled under the medical vocational guidelines in step five of the sequential evaluation, but those guidelines apply only if the administrative law judge determines that a claimant is incapable of performing his past relevant work at step four of the evaluation." (citing 20 C.F.R. § 404.1520(a)(4)(iv), (v))).

### 1. Plaintiff's Past Relevant Work

The ALJ considered three of Plaintiff's jobs as past relevant work – jobs for the following employers: (1) Florida Department of Corrections ("FLDOC") (January 2010 – December 2011); (2) Florida Department of Transportation ("FLDOT") (July 2013 – June 2014); and (3) Areawide Council on Aging of Broward County Inc. (August 2015 – August 2016).[2]  Tr. 1357.

At the April 23, 2024 hearing, Plaintiff testified that her Areawide Council job was "like a call center rep position that I was hired for, which required me sitting and taking calls to assist the citizens of Broward County."  Tr. 1376.  Plaintiff also "assisted them with some accounting duties," but only for "a very short time."  Tr. 1376.  In her Areawide Council job, Plaintiff was seated the majority of the day.  Tr. 1376.  The ALJ asked Plaintiff whether she also worked as a receptionist at some point at Areawide Council, and Plaintiff responded, "I came around and relieved them with exception – receptionist duties.  Well, I guess I could do some standing.  At that point it required some standing as well as sitting and . . . greeting, I guess, the customers or whatever when they came in."  Tr. 1376-77.

Regarding her FLDOC and FLDOT jobs, Plaintiff testified they were "[b]oth clerical, again, front desk receptionist" and that she did "an extensive amount of filing."  Tr. 1377-78.  She also sorted and shredded documents (in at least one of the jobs), which she had to carry.  Tr. 1378-79.  According to Plaintiff, she performed about 50% receptionist duties and 50% clerical duties.  Tr. 1378.

In her decision, the ALJ discussed Plaintiff's testimony regarding the Areawide Council, FLDOC, and FLDOT jobs.  The ALJ first described the FLDOT job as one in which Plaintiff

---

[2] Plaintiff listed the name of the last employer as Aging and Disability Resource Center.  Tr. 382, 408, 1581.  The ALJ's decision and the detailed earnings query for Plaintiff list the employer as Areawide Council on Aging of Broward County Inc.  Tr. 283, 1357.

indicated working as a "front desk receptionist." Tr. 1357. The ALJ then explained that in the FLDOC job, Plaintiff reported working in "a similar capacity" (i.e., as a receptionist). Tr. 1357. Notwithstanding the "receptionist" role, the ALJ noted that Plaintiff "characterized her past work with [FLDOT and FLDOC] as 'very physical' in nature, including duties like lifting bags of shredded documents." Tr. 1357. Regarding the Areawide Council job, the ALJ explained that Plaintiff testified she worked as a "call center manager" and that the job "largely involved sitting throughout the workday" (though Plaintiff also "stated that the work involved little 'accounting duties' that she did for only a 'very short time'"). Tr. 1357.

After discussing the three jobs, the ALJ found, based on the VE's testimony (at the April 23, 2024 hearing), that Plaintiff had past relevant work as (1) a receptionist and (2) a customer service representative. Tr. 1357. The ALJ noted that both jobs are considered "sedentary, semi-skilled work" under the DOT (i.e., as generally performed). Tr. 1357. However, based on the VE's testimony, the ALJ found that Plaintiff's past work as a receptionist was *actually* performed as "light, semi-skilled in nature." Tr. 1357. But Plaintiff's RFC restricted her to "sedentary" work. Tr. 1348. Therefore, the ALJ found that Plaintiff could perform both jobs (receptionist and customer service representative) as generally performed but only the customer service representative job as actually performed. Tr. 1357.

Although the ALJ and VE did not expressly state which of Plaintiff's job(s) fell under "receptionist" and which job(s) fell under "customer service representative", it is evident that the ALJ found the FLDOT and FLDOC jobs to be "receptionist" jobs under the Dictionary of Occupational Titles (DOT) and the Areawide Council job to be a "customer service representative"

10

job under the DOT.[3]  After all, the ALJ expressly stated that Plaintiff indicated working as a "front

desk *receptionist*" for FLDOT and in a similar role for FLDOC, and the ALJ expressly stated that

Plaintiff testified she worked in a "call center" role for Areawide Council.  Tr. 1357.[4]

Moreover, the VE testified, and the ALJ found, that Plaintiff actually performed her

receptionist job at the light exertional level – as opposed to the customer service representative

job, which Plaintiff actually performed at the sedentary level.  Tr. 1357, 1384.  But as the ALJ

explained – based on Plaintiff's testimony – the Areawide Council job "largely involved sitting

throughout the workday."  Tr. 1357.  In other words, the ALJ's findings regarding the Areawide

Council job are consistent with a job actually performed at the *sedentary* exertional level.  The

ALJ only described the FLDOT and FLDOC jobs as including greater exertional requirements.

*See* Tr. 1357.[5]  Thus, it is quite clear based on my review of the ALJ's decision and the April 23,

2024 hearing transcript that the ALJ found – consistent with the VE's testimony – that Plaintiff's

---

[3] Defendant's Motion seems to wholly overlook the fact that the ALJ found the FLDOT and FLDOC jobs (and not the Areawide Council job) to be "receptionist" jobs under the DOT, and Defendant's Motion seems to confuse what Plaintiff did in each job.  Notwithstanding the confusion in Defendant's Motion, it is evident from the record how the ALJ (and VE) characterized Plaintiff's past relevant work.  And their characterizations of Plaintiff's past relevant work are supported by substantial evidence.  That is because their characterizations are reasonable based on Plaintiff's testimony at the April 23, 2024 hearing and based on work background information Plaintiff submitted in January 2024 (Tr. 1581).

[4] Even Plaintiff appears to recognize that "the ALJ believed the job at Areawide Council on Aging of Broward was that of Customer Service Representative."  [DE 11] at 2.

[5] *Cf.* 20 C.F.R. § 404.1567(a) ("Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."); § 404.1567(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. . . . [A] job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. . . ."); *see also* SSR 83-10.

Areawide Council job was a "customer service representative" job under the DOT and that Plaintiff's FLDOT and FLDOC jobs were "receptionist" jobs under the DOT.  It is likewise clear that the ALJ found that Plaintiff actually performed her Areawide Council job at the sedentary exertional level and the FLDOT and FLDOC jobs at the light exertional level.

With that background, I turn to Plaintiff's argument that the ALJ erred in characterizing Plaintiff's past relevant work.  Plaintiff contends that the ALJ erred by classifying each job as a single job under the DOT.   According to Plaintiff, all three jobs were "composite" jobs.  "[C]omposite jobs have significant elements of two or more occupations and, as such, have no counterpart in the DOT."  SSR 82-61;[6] *see also Micaud v. Acting Comm'r of Soc. Sec.*, No. 24-10253, 2024 WL 4948684, at *2 (11th Cir. Dec. 3, 2024) ("The Social Security Agency's Program Operations Manual System states that '[c]omposite jobs have significant elements of two or more occupations and as such, have no counterpart in the DOT.'" (quoting POMS DI 25005.020)); *Finch v. Comm'r, Soc. Sec. Admin.*, No. 23-13417, 2024 WL 2368475, at *2 (11th Cir. May 23, 2024); *Smith v. Comm'r of Soc. Sec.*, 743 F. App'x 951, 954 (11th Cir. 2018).  A "claimant's past relevant work may be a composite job if it takes multiple DOT occupations to locate the main duties of the past relevant work as described by the claimant."  *Micaud*, 2024 WL 4948684, at *2 (quoting POMS DI 25005.020) (alterations adopted); *see also Finch*, 2024 WL 2368475, at *2; *Smith,* 743 F. App'x at 954.  However, simply because "a job entails responsibilities beyond those outlined in the *DOT* does not necessarily make it a composite job."  *Sloan v. Saul*, 933 F.3d 946, 950 (8th Cir. 2019).   "A claimant's prior work 'may have involved functional demands and job duties significantly in excess of those generally required for the job by other employers throughout the national economy.'"  *Id.* (quoting SSR 82-61).  "An inability to perform these 'excessive functional

---

[6] SSR 82-61 was effective until June 22, 2024 (the day after the ALJ's decision in this matter).

demands' does not render a claimant disabled under the Act." *Id.*; *see also Finch*, 2024 WL 2368475, at \*2.

It matters whether a job is a "composite" job for purposes of determining whether a claimant can perform her past relevant work.  Ordinarily, "[t]he ALJ may consider past relevant work 'either as the claimant actually performed it *or* as generally performed in the national economy.'" *Micaud*, 2024 WL 4948684, at \*2 (quoting 20 C.F.R. § 404.1560(b)(2)).[7]  After all, "[t]he regulations require that the claimant not be able to perform his past *kind* of work, not that he merely be unable to perform a specific job he held in the past." *Id.* (quoting *Jackson v. Bowen*, 801 F.2d 1291, 1293 (11th Cir. 1986)).  But "the analysis is somewhat different when the claimant's past relevant work qualifies as a composite job." *Smith,* 743 F. App'x at 954.  "When the claimant's previous work qualifies as a composite job, the ALJ must consider the particular facts of the individual case to consider whether the claimant can perform his previous work as actually performed." *Id.* (citing SSR 82-61)  In other words, if a claimant's past relevant work was a "composite" job, the ALJ must only consider whether the claimant can perform that job as

---

[7] *See also Holder v. Soc. Sec. Admin.*, 771 F. App'x 896, 897 (11th Cir. 2019) ("This appeal primarily concerns Step Four of the five-step evaluation, where an ALJ will conclude that a claimant is not disabled if she can still perform either the 'actual . . . job duties of a particular past relevant job,' or the 'job duties of the occupation as generally required by employers throughout the national economy.'" (quoting SSR 82-61); *Smith*, 743 F. App'x at 953-54 ("Under *Jackson*, when a claimant's prior job involved functional demands and duties significantly in excess of those generally required for that type of work by employers in the national economy, it is not enough for the claimant to show that he cannot perform the demands and duties actually involved in the job. Instead, he must show that he cannot perform the functional demands and job duties of the position generally required by employers nationwide."); *Scharber v. Comm'r of Soc. Sec.*, 411 F. App'x 281, 282 (11th Cir. 2011) ("A claimant seeking disability benefits bears the burden of proving that she cannot perform her past relevant work either as she performed it or as it is generally performed in the national economy."); *Waldrop v. Comm'r of Soc. Sec.*, 379 F. App'x 948, 953 (11th Cir. 2010) ("[I]t is the claimant's burden to demonstrate not only that she can no longer perform her past relevant work as she actually performed it, but also that she can no longer perform this work as it is performed in the general economy.").

*actually* performed.  *See Sloan*, 933 F.3d at 950 ("If a claimant's past relevant work qualifies as a composite job, then the ALJ should not consider the work 'as generally performed in the national economy,' but must analyze the particular facts of the case to determine whether the claimant can fulfill the duties of the prior work as actually performed." (citations omitted)); *Ray v. Berryhill*, 915 F.3d 486, 491 (7th Cir. 2019) ("[I]f the prior position was a composite job, then the ALJ may not reference it when determining whether a claimant can perform his past job as it is generally performed." (citations omitted)).

Plaintiff contends that her Areawide Council job was a composite job because it "included components of two jobs, involving customer service representative and receptionist duties."  [DE 6] at 8.  Thus, Plaintiff contends that "the ALJ was legally precluded from considering this job as generally performed" and that "the ALJ had to consider the job . . . as actually performed as a whole, not just the customer service representative duties."  *Id.*  Although Plaintiff would be correct if the job was a "composite" job, it was not.

Plaintiff's arguments regarding the ALJ's consideration of the Areawide Council job fail for at least two independent reasons.   First, substantial evidence supports the ALJ's characterization of the Areawide Council job as a "customer service representative" job rather than a "receptionist" job or a "composite" job.  Plaintiff's argument regarding why the job was not simply a "customer service representative" job, but rather a "composite" job that also involved significant receptionist duties seems to be premised upon Plaintiff's testimony that she "came around and relieved them with exception – receptionist duties."  Tr. 1376; [DE 6] at 7.

But Plaintiff's testimony regarding the performance of "receptionist duties" is conclusory. Plaintiff does not explain what "receptionist duties" she performed nor discuss how long she spent performing such duties, and she certainly does not point to anything to show that such duties were

among her main duties. *Cf. Smith,* 743 F. App'x at 954 ("To establish that his position was a composite job, Smith had to prove that hanging rent notices was one of the 'main duties' of his position with the property management company. . . . Although Smith bore the burden of proof on this issue, he introduced no evidence about how much time he spent hanging rent notices or otherwise establishing that this duty was a significant element of the job." (internal citations omitted)).[8]   If anything, Plaintiff's testimony indicates that she only performed occasional "receptionist duties." *See* Tr. 1376 ("came around and relieved them").  At the very least, it was reasonable and rational for the ALJ to conclude that "receptionist duties" were not among Plaintiff's main duties.  Thus, the ALJ's determination that the Areawide Council job was a "customer service representative" job and not a "composite" job is supported by substantial evidence.  And because the job was not a "composite" job, the ALJ did not err in considering the job as generally performed.

The second reason that Plaintiff's argument fails is because the ALJ found that Plaintiff could perform her customer service representative job as *actually* performed.  And as discussed above, it is clear that when the ALJ found that Plaintiff could perform the customer service representative job as actually performed, the ALJ was talking about the Areawide Council job, which the ALJ reasonably found that Plaintiff performed at the sedentary exertional level.  Thus, even if Plaintiff's Areawide Council job was a "composite" job (it was not), any error in not

---

[8] *See also Micaud*, 2024 WL 4948684, at *3 ("Micaud bore the burden to establish that he performed a composite job, and he failed to meet it."); *Finch*, 2024 WL 2368475, at *3 ("To establish that her position was a composite job, Finch had to prove that serving was one of the 'main duties' of her position at the nursing home. . . . Although Finch had additional responsibilities such as serving, she did not establish that these were main parts of her long-term work duties compared with her cleaning responsibilities, nor did she suggest through counsel at either hearing that the cleaner classification was incorrect." (internal citations omitted)).

classifying the job as such would be harmless given that the ALJ determined (as explained in greater detail above) that Plaintiff could perform the job as actually performed.

Lastly, I note that Plaintiff also contends the ALJ erred in not classifying Plaintiff's FLDOT and FLDOC jobs as "composite" jobs. But the Court need not resolve Plaintiff's argument regarding the FLDOT and FLDOC jobs. That is because, even if the Court assumes that the jobs were composite jobs and that Plaintiff could not perform the jobs as actually performed, the fact remains that Plaintiff could perform the Areawide Council job, and a claimant is not disabled if she can perform *any* of her past relevant work. *See, e.g.*, *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (noting step four determination is whether the claimant, based on her RFC, "can perform any of his or her past relevant work despite the impairment"); *see also Kawelo v. Berryhill*, 732 F. App'x 584, 587-88 (9th Cir. 2018); *Lind v. Astrue*, 370 F. App'x 814, 817 (9th Cir. 2010) (emphasis added) ("Any error by the ALJ in considering jobs that did not qualify as past relevant work was harmless because the ALJ found that Lind could perform her past relevant work as a customer service representative, and *the ability to perform one of her past jobs is sufficient to meet the standard*.").

In sum, the ALJ did not err by not treating Plaintiff's Areawide Council job as a "composite" job, and the ALJ's step four determination is supported by substantial evidence.

### 2. Plaintiff's Mental Impairments

Plaintiff has failed to establish error with respect to the ALJ's evaluation of Plaintiff's mental impairments. As indicated above, at step two of the sequential evaluation, although the ALJ found that Plaintiff has several severe *physical* impairments, she found that Plaintiff's *mental* impairments are not severe. When the ALJ later assessed Plaintiff's RFC, she found that Plaintiff is limited to sedentary work (with several additional limitations), but the ALJ did not include any

limitations in Plaintiff's RFC based on Plaintiff's mental impairments.  Plaintiff contends that the ALJ erred by finding Plaintiff's mental impairments to be nonsevere and by not including limitations in Plaintiff's RFC on account of Plaintiff's mental impairments.  For similar reasons, Plaintiff contends that the ALJ's evaluation of the medical opinion of Dr. Garcon – a consultative examiner who found Plaintiff has severe mental impairments that limit or impair her ability to work – is not supported by substantial evidence.

Although Plaintiff's ultimate contention of harmful error concerns the absence of limitations in Plaintiff's RFC on account of Plaintiff's mental impairments, Plaintiff's arguments start back at step two, the step at which an ALJ must consider the medical severity of a claimant's impairments.  *See Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1264-65 (11th Cir. 2019); 20 C.F.R. §§ 404.1520(a)(4)(ii),(c), 416.920(a)(4)(ii),(c).  Here, the ALJ found that Plaintiff's "medically determinable mental impairments of a neurocognitive disorder, depression, and anxiety, considered singularly and in combination, do not cause more than a minimal limitation in [Plaintiff's] ability to perform basic mental work activities and are therefore non-severe."  Tr. 1346.  Again, in making this finding, the ALJ considered the four broad functional areas (the paragraph B criteria).  *See Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1324 (11th Cir. 2021) ("In evaluating the severity of a claimant's mental impairment at steps two and three of the sequential analysis, the ALJ makes determinations as to the claimant's abilities in four broad functional areas known as 'Paragraph B' criteria." (citing *Schink*, 935 F.3d at 1269)).  "The four areas consider the claimant's ability to (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage herself."  *Id.* at 1324-25 (citing 20 C.F.R. § 404.1520a(c)(3)).  "The ALJ must assign a rating of none, mild, moderate, marked, or extreme to a claimant's limitation in each area of functioning."  *Id.* at 1325

(citing 20 C.F.R. § 404.1520a(c)(4)).  Here, as noted above, the ALJ assigned a rating of "mild" in all four areas.  Tr. 1346-47.  Because the ALJ did not find more than a mild limitation in any area, and because the ALJ found "'no' episodes of decompensation which have been of extended duration in the fourth area," she concluded Plaintiff's mental impairments are nonsevere.  Tr. 1347.

The ALJ's decision explains why the ALJ only assessed *mild* limitations in the four broad functional areas.  The ALJ explained, *inter alia*, that: (1) while primary care provider records referenced diagnoses of depression and anxiety, "there were few acute mental status examination signs/findings" and "little treating evidence from an 'acceptable medical source' establishing the presence of a medically determinable mental impairment"; (2) "[a] pain management provider routinely found a 'total score' of one on the Patient Health Questionnaire-2 (PHQ-2), a screening tool used to assess an individual for depression";[9] (3) concerns related to "deficits involving long-term memory skills and the ability to follow commands" were only documented on one occasion; (4) the record contains "little reference . . . to issues involving social interaction and relatability"; (5) though deficits with attention and concentration were noted on one occasion, "these observations are in contrast to the many other instances where a primary care provider, pain management specialist, etc., failed to describe [Plaintiff] as anything other than alert and fully oriented"; and (6) Plaintiff "has evidently not experienced an episode of decompensation (let alone an episode of extended duration)."  Tr. 1346-47.

---

[9] *See Jones v. Dudek*, No. 1:23-CV-01506-MHH, 2025 WL 923484, at *7 n.15 (N.D. Ala. Mar. 26, 2025) (cleaned up) ("The PHQ-2 inquires about the frequency of depressed mood and anhedonia over the prior two weeks. The PHQ-2 includes the first two items of the PHQ-9, a more detailed depression screening tool. The PHQ-2 does not diagnose or monitor the severity of depression but rather screens for depression as a first step approach. A PHQ-2 score ranges from 0 to 6, with a score of 3 requiring further evaluation.").

As explained further below, the ALJ's assessment of mild paragraph B limitations is supported by substantial evidence. But even if the Court were to find the ALJ had erred in evaluating Plaintiff's mental impairments at step two, any such error would be harmless given that "the ALJ nevertheless proceeded in the sequential evaluation, duly considered [Plaintiff's] mental impairment[s] when assessing [her] RFC, and reached conclusions about [Plaintiff's] mental capabilities supported by substantial evidence." *Schink*, 935 F.3d at 1268. As the ALJ noted, the mental RFC assessment requires a more detailed assessment than the paragraph B criteria evaluation at steps two and three." Tr. 1348; *see also Buckwalter*, 5 F.4th at 1325 ("The ALJ's analysis as to the Paragraph B criteria is part of steps two and three of the sequential analysis; it is distinct from the more detailed inquiry as to a claimant's RFC at step four." (citing *Winschel*, 631 F.3d at 1180). After all, step two only involves a "threshold" inquiry. *Schink*, 935 F.3d at 1265. It simply "'acts as a filter' to weed out claims where there are no severe impairments at all." *Bullard v. Comm'r, Soc. Sec. Admin.*, 752 F. App'x 753, 755 (11th Cir. 2018) (quoting and citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)).

Here, because the ALJ found severe impairments at step two – albeit no severe mental impairments – she did not "weed out" Plaintiff's claim at step two. Rather, the ALJ denied Plaintiff's claim at step four after finding that Plaintiff – based on her RFC – could perform her past relevant work.

In conducting the more detailed RFC inquiry at the outset of step four, an ALJ is required to consider "all relevant medical and other evidence." *Buckwalter*, 5 F.4th at 1320; *see also* 20 C.F.R. § 404.1545(a)(1) ("We will assess your residual functional capacity based on all the relevant evidence in your case record."). An "ALJ must also consider a claimant's medical condition taken as a whole." *Schink*, 935 F.3d at 1269 (citations omitted). Importantly, though,

19

"[s]o long as the ALJ's decision demonstrates to the reviewing court that it considered the claimant's medical condition as a whole, the ALJ is not required to cite every piece of evidence in the record." *Buckwalter*, 5 F.4th at 1326 (citing *Dyer*, 395 F.3d at 1211); *see also Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole." (quoting *Dyer*, 395 F.3d at 1211) (alterations adopted)).

The ALJ's decision in this case shows that she did in fact further consider Plaintiff's mental impairments (and condition as a whole) when determining Plaintiff's RFC.  In other words, the ALJ did not simply decline to further consider Plaintiff's mental impairments based on the ALJ's step-two finding that Plaintiff's mental impairments were not severe.  For instance, when assessing Plaintiff's RFC, the ALJ again noted that Plaintiff has anxiety and depression.  Tr. 1349, 1350, 1354.  But the ALJ reiterated that Plaintiff's "primary care providers did not identify any considerably abnormal mental status examination signs/findings, and the pain management providers routinely noted a 'total score' of one on the PHQ-2."  Tr. 1354.  Additionally, the ALJ explained that Plaintiff "generally denied symptoms associated with depression and anxiety during the [December 20, 2022] hearing."  Tr. 1356.

Plaintiff takes exception to the ALJ's characterization of her hearing testimony.  She contends that the ALJ "ignores the specifics" of her testimony.  [DE 6] at 14.  At the December 20, 2022 hearing, Plaintiff testified that she "feel[s] like I'm unable to work now because of all of the ailments that I'm suffering from, with all the amount of pain and disc problems, including the migraine headaches and that type of thing, and my ability to walk and side effects from my

medications."  Tr. 65.  When discussing her hobbies (or lack thereof), Plaintiff said she has "noticed that when I'm watching TV, I'm just not focusing well on anything at all."  Tr. 66.  When asked why she was having issues focusing, Plaintiff testified that she did not know why, "perhaps, it's the reaction to the medication."  Tr. 66-67.  Later, when Plaintiff's counsel questioned her at the hearing, he asked Plaintiff whether she has any problems because of depression and anxiety. Tr. 72.  Plaintiff responded, "nothing other than the severe aches and pains and then some symptoms associated with the anxiety, I have lots of the constipation most all the time. And I'm just like dealing with pain, trying to deal with it."  Tr. 72-73.  Counsel followed up by asking whether "the anxiety or depression . . . cause any effects that may interfere with [Plaintiff's] ability to do the work that [she] used to do."  Tr. 73.  Plaintiff responded,

> It does. I just have to -- trying to take a break. And I don't know. Try to get myself back on the right track because the depression absolutely -- it happens because it's very frustrating not being able to do any of the things that I was able to do really prior to 2002. All of these symptoms have just progressed. And now that I feel like they're really out of control, so. That's what's happening to me.

Tr. 73.  At Plaintiff's subsequent hearing – an April 23, 2024 hearing where the "focus" was Plaintiff's past work, Tr. 1373 – when asked why she was unable to do her prior jobs, Plaintiff stated, "[w]ell, right now I'm to the point that I'm almost unable to walk. I have like total-body pain and trouble with my back and hips, knee pain, oh, problems with my hands. So my mobility is just pretty much not there."  Tr. 1379.

Having reviewed Plaintiff's testimony (particularly her testimony from the December 20, 2022 hearing), I find the ALJ's characterization of Plaintiff's testimony – that Plaintiff *generally* denied symptoms associated with depression and anxiety – to be a reasonable characterization.  As Plaintiff's testimony (including the testimony described above) shows, Plaintiff's testimony regarding her inability to work was almost exclusively focused on her physical symptoms and pain

(rather than her mental impairments).  Even if some of Plaintiff's statements could lead a reasonable ALJ to reach a different conclusion than the ALJ did here, the fact remains that the ALJ's description of Plaintiff's testimony is reasonable, and it is not this Court's role to reweigh the evidence.

In addition to discussing Plaintiff's testimony and evidence in the record from Plaintiff's primary care providers and pain management providers, the ALJ also evaluated the prior administrative medical findings and Dr. Garcon's opinion in accordance with 20 C.F.R. §§ 404.1520c and 416.920c.  Under those regulations, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Rather, the ALJ must evaluate the persuasiveness of medical opinions and prior administrative medical findings based upon five factors: "(1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) 'other factors that tend to support or contradict' the opinion" or finding. *Walker v. Soc. Sec. Admin., Comm'r*, No. 21-12732, 2022 WL 1022730, at *2 (11th Cir. Apr. 5, 2022) (citing 20 C.F.R. § 404.1520c(c)(1)-(5)).  Supportability and consistency are the most important factors.  20 C.F.R. §§ 404.1520c(a), 416.920c(a).

Although an ALJ is not required to provide a specific weight to medical opinions, the ALJ still needs to articulate how persuasive the ALJ finds medical opinions and prior administrative medical findings to be.  20 C.F.R. §§ 404.1520c(b), 416.920c(b).  Nonetheless, the regulations make clear that in doing so, an ALJ is "not required to articulate how [the ALJ] considered each medical opinion or prior administrative medical finding from one medical source individually." 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1).  In other words, if a single source offers multiple medical opinions or multiple administrative medical findings, an ALJ only needs to collectively

address the source's opinions or findings in a single analysis rather than including a separate analysis for each opinion or finding.  20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1).  In that analysis, the ALJ must explain how she considered the factors of supportability and consistency, but the ALJ is generally not required to explain how she considered the other three factors.  20 C.F.R. §§ 404.1520c(b)(2)-(3), 416.920c(b)(2)-(3).  Under the supportability factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. §§ 404.1520c(c)(1) 416.920c(c)(1).  Under the consistency factor, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).  While an ALJ must "state with at least some measure of clarity the grounds for his decision," the ALJ is not required to use any "magic words" when evaluating medical opinions.  *Klarner v. Comm'r of Soc. Sec.*, No. 24-11613, 2025 WL 1753548, at *13 (11th Cir. June 25, 2025); *see also Raper v. Comm'r of Soc. Sec.*, 89 F.4th 1261, 1276 n.14 (11th Cir. 2024); *Ball v. Soc. Sec. Admin., Comm'r*, No. 24-12496, 2025 WL 1010204, at *3 (11th Cir. Apr. 4, 2025).

Here, the record contains prior administrative medical findings regarding Plaintiff's mental impairments from two state agency consultants, Julie Bruno, Psy.D. and Alan Harris, Ph.D., and a medical opinion from Dr. Garcon.  *See* Tr. 108-71 (containing prior administrative medical findings), Tr. 877-81 (containing Dr. Garcon's opinion).  The ALJ provided the following discussion of the prior administrative medical findings:

> [Dr. Bruno and Dr. Harris] opined there was "insufficient" evidence to arrive at an opinion for the period prior to the date last insured. There is some reason to believe

that this particular finding is well-supported by the evidence. However, for the purposes of this decision, the [ALJ] concedes this point and notes satisfactory evidence to support a finding of medically determinable mental impairments throughout the period at issue, though there are just mild "paragraph B" limitations.

For the purposes of adjudicating the Title XVI supplemental security income claim, Dr. Bruno found there were medically determinable neurocognitive, affective, anxiety, and somatic symptom-related disorders, though she found that these were non-severe and evidenced by just mild "paragraph B" limitations. Dr. Harris, on the other hand, found that the claimant's medically determinable mental impairments were severe and resulted in moderate "paragraph B" limitations. Dr. Harris' opinion appears to rely largely on the observations of a consultative examiner who saw the claimant in the spring of 2021, and whose report is in the record at Exhibit B13F.

Nevertheless, and as already emphasized above, the undersigned finds that the consistent treatment notes from the claimant's primary care providers, pain management providers, and other treating providers offer a much more reliable picture of the claimant's mental health functioning. Hence, the Administrative Law Judge finds Dr. Bruno's opinion on initial review more persuasive than the opinions from Dr. Harris and the consultative examiner.

Tr. 1347-48 (internal citations omitted).[10]

Regarding Dr. Garcon, when discussing Plaintiff's mental impairments, the ALJ provided the following synopsis of Dr. Garcon's evaluation:

Dr. Garcon identified diagnoses of depression and anxiety, as well as an unspecific neurocognitive disorder. He described the claimant as exhibiting a "disheveled" appearance and "depressed mood." Affect was "constricted, flat, and tearful." Insight and judgment "seemed limited," while thought processes were "slow and concrete, with limited comprehension." Some difficulties with speech were noted, as well as poor long-term memory skills. Attention and concentration were only "fair," and difficulties with "cognitively complex commands" were identified.

Tr. 1354. The ALJ recognized that "Dr. Garcon's report connote[d] the presence of severe mental impairments" but found that Dr. Garcon's "one-time observations [were] counterbalanced by the

---

[10] The foregoing discussion of the prior administrative medical findings appears after the ALJ's evaluation of the paragraph B criteria; it is not repeated in the RFC portion of the ALJ's decision. However, the Eleventh Circuit and other circuits have explained that "it is proper to read the ALJ's decision as a whole, and . . . it would be a needless formality to have the ALJ repeat substantially similar factual analyses." *Raper*, 89 F.4th at 1275 (citations omitted).

ample evidence from primary care providers, pain management providers, and other medical sources that made little to no mention of any concern for mental health functioning." Tr. 1354.

Thereafter, the ALJ evaluated Dr. Garcon's opinion.  She noted that Dr. Garcon opined that Plaintiff's "mental impairments would likely hinder her ability to obtain and sustain employment." Tr. 1356.  However, the ALJ found Dr. Garcon's opinion to be unpersuasive.  Tr. 1356.  She explained that the opinion was conclusory in nature, unsupported by the evidence provided at the initial and reconsideration levels, inconsistent with the evidence presented at the hearing level, and inconsistent with Plaintiff's lack of mental health treatment. Tr. 1356.  The ALJ also reiterated that Plaintiff generally denied symptoms associated with depression and anxiety at the December 20, 2022 hearing.  Tr. 1356.  Ultimately, the ALJ concluded that "statements from Dr. Garcon and Dr. Harris suggesting anything more than a finding of non-severe mental impairments are inconsistent with the treatment notes from [Plaintiff's] primary care providers, pain management providers, and other treating providers," which the ALJ found to "offer a much more reliable picture of [Plaintiff's] overall stable mental health functioning."  Tr. 1356.

Plaintiff contends that the ALJ erred in evaluating Dr. Garcon's opinion.  Plaintiff also contends, at least in passing, that the ALJ "did not properly reject" Dr. Harris's opinion.  [DE 6] at 14.  Plaintiff does not appear to contend that the ALJ failed to evaluate the persuasiveness of Dr. Garcon's opinion and the prior administrative medical findings or that the ALJ failed to perform the inquiry mandated under the regulations, and the ALJ's decision, at a minimum, does "state with at least some measure of clarity the grounds for [her] decision."  *Klarner*, 2025 WL 1753548, at *13.

What Plaintiff does seem to argue is that the ALJ's evaluation of Dr. Garcon's opinion, and the ALJ's assessment of nonsevere mental impairments, are not supported by substantial

evidence.  *See* [DE 6] at 10 (arguing, based on Dr. Garcon's report, that "the ALJ's finding that the Plaintiff's mental impairments are not severe is not supported by substantial evidence").  But Plaintiff's arguments regarding Dr. Garcon's report largely amount to a request that this Court reweigh the evidence, something this Court may not do.

Plaintiff does also take issue with what she deems the "ALJ address[ing] the irrelevant part of Dr. Garcon's opinion" but "failing to properly address the actual limitations identified by Dr. Garcon."  [DE 6] at 11.  What Plaintiff refers to as the "irrelevant" part of Dr. Garcon's opinion is Dr. Garcon's statement that Plaintiff's mental impairments "are likely to hinder her ability to obtain and sustain employment."  Tr. 879.  The ALJ did properly reject that statement because it was a statement on an issue reserved to the Commissioner and thus "inherently neither valuable nor persuasive."  20 C.F.R. §§ 404.1520b(c), 416.920b(c).  ALJs need "not provide any analysis about [they] considered such evidence . . . ."  20 C.F.R. §§ 404.1520b(c), 416.920b(c); *see also Watson v. Comm'r of Soc. Sec.*, No. 24-10668, 2025 WL 274903, at *4 (11th Cir. Jan. 23, 2025). In other words, the ALJ was "specifically relieved from providing any analysis about how such evidence was considered."  *Miller v. Kijakazi*, No. 22-60541, 2023 WL 234773, at *2 (5th Cir. Jan. 18, 2023) (citing 20 C.F.R. § 404.1520b(c)).

Plaintiff seems to recognize that the ALJ was not obligated to evaluate Dr. Garcon's statement regarding Plaintiff's ability to obtain and sustain employment.  However, Plaintiff appears to argue that the ALJ should have assessed Dr. Garcon's opinions that Plaintiff is limited "to the ability to follow simple commands and perform in the areas involving short-term memory" and that Plaintiff has "poor abilities with long term memory, complex commands, and visual motor skills and coordination."  [DE 6] at 11.  In this regard, what Dr. Garcon actually stated is that "[r]esults of the mental status examination indicate satisfactory performance in . . . short term

memory [and the] ability to follow simple command[s]," and that Plaintiff "did fairly on attention and concentration but poorly on long term memory, following complex commands and visual motor skills and coordination." Tr. 880. However, these statements merely reflect Dr. Garcon's observations regarding Plaintiff's mental status examination. For instance, Dr. Garcon did not opine that Plaintiff is unable to follow complex commands in a work setting. *Cf. Staheli v. Comm'r, SSA*, 84 F.4th 901, 906 n.2 (10th Cir. 2023) (emphasis in original) (alterations adopted) ("[T]he current definition of a medical opinion requires 'a statement from a medical source' about *both* 'what the claimant can still do despite her impairment(s)' *and* 'whether she has one or more impairment-related limitations or restrictions in specified abilities.'" (quoting 20 C.F.R. § 404.1513(a)(2))); *Ball*, 2025 WL 1010204, at *3 ("The lifting, pushing, and pulling limitations were not 'medical opinions' because they did not address Ball's ability to perform demands of work 'despite [his] impairment(s).' They addressed activities Ball should not engage in at all, not what he could still do in a work context." (internal citation omitted)); *Dye v. Comm'r of Soc. Sec.*, No. 5:20-CV-459-NPM, 2022 WL 970186, at *4 (M.D. Fla. Mar. 31, 2022) ("None of the statements in Downey's letter assess the extent to which Dye can perform any particular function in a work setting, and so they do not constitute 'medical opinions' for purposes of the applicable regulatory regime.").

Moreover, as noted above, the ALJ discussed Dr. Garcon's observations, including the issues Plaintiff exhibited with following complex commands and with long-term memory. Tr. 1354. And the ALJ did not ignore those observations, which she recognized "connote[d] the presence of severe impairments." Tr. 1354. The ALJ simply weighed the evidence and reasonably found that the record, on balance, demonstrated nonsevere mental impairments contrary to Dr. Garcon's one-time observations. Tr. 1354. Plaintiff contends that Dr. Garcon's observations were

not merely one-time observations but were also based on Dr. Garcon's review of Plaintiff's medical records.  While Plaintiff is correct that Dr. Garcon indicates he reviewed at least some of Plaintiff's medical records, the fact remains that Dr. Garcon's statements regarding Plaintiff's memory and following of complex commands were based on Dr. Garcon's one-time observations.  At the very least, it was reasonable for the ALJ to so conclude.

Plaintiff further contends that the record contains no medical opinions that disagree with the opinion/findings of Dr. Garcon and Dr. Harris.  But what Plaintiff fails to mention is that Dr. Bruno (like the ALJ) assessed only mild limitations in the four broad functional areas.  In other words, Dr. Bruno's prior administrative findings, which the ALJ found to be persuasive, are at odds with Dr. Garcon's opinion and Dr. Harris's findings.  And Dr. Bruno's findings combined with the other reasons the ALJ gave for assessing mild limitations and for not including limitations in Plaintiff's RFC on account of Plaintiff's mental impairments provide substantial evidence to support the ALJ's decision.  Again, beyond relying on Dr. Bruno's findings (which the ALJ found to be persuasive), the ALJ relied on other evidence, including Plaintiff's testimony (which the ALJ reasonably characterized as generally denying symptoms related to depression and anxiety), Plaintiff's routine total score of one on the PHQ-2, and treatment notes and records from Plaintiff's providers (which the ALJ reasonably found did not reflect any major concerns with Plaintiff's mental health functioning).

An additional argument Plaintiff raises (at least implicitly) is that even if the ALJ did not err in assessing mild limitations in the paragraph B criteria, she was still required to more explicitly account for those mild limitations when assessing Plaintiff's RFC.  Notably, however, "persuasive precedent demonstrates that ALJs are not obligated to include mental limitations in the RFC even when they find 'mild' limitations while" assessing the paragraph B criteria.  *Alvarado v. Kijakazi,*

No. 22-CV-60416, 2023 WL 2548424, at *13 (S.D. Fla. Mar. 17, 2023) (quoting *Chestang v. Comm'r of Soc. Sec.*, No. 8:21-CV-482-MRM, 2022 WL 4354849, at *8 (M.D. Fla. Sept. 20, 2022) and collecting other cases).[11]  Now, that does not relieve ALJs of the obligation to consider all relevant evidence, all impairments (both severe and non-severe), and a claimant's condition as a whole when assessing a claimant's RFC.  *See Buckwalter*, 5 F.4th at 1320; *Schink*, 935 F.3d at 1268-69.  But, as discussed above, the ALJ's decision shows that she fulfilled that obligation.[12]

Overall, the ALJ's decision shows that she considered Plaintiff's mental impairments and condition as a whole in conjunction with assessing Plaintiff's RFC.  Additionally, the ALJ's discussion of Plaintiff's mental impairments and the reasons the ALJ provided for finding them to

---

[11] The situation may be different when moderate limitations are involved.  *See Buckwalter*, 5 F.4th at 1325 ("[T]hough the analysis at steps two and three is less detailed, an ALJ is still required to account for a claimant's *moderate* limitation in the area of concentration, persistence, or pace in a hypothetical posed to the VE." (citing *Winschel*, 631 F.3d at 1180-81) (emphasis added)); *see also Garcia v. Comm'r, Soc. Sec. Admin.*, No. 23-11184, 2023 WL 7404856, at *5 (11th Cir. Nov. 9, 2023) ("Contrary to Garcia's argument, the ALJ was not required to incorporate Garcia's mental impairments that he determined at step two in the rest of his RFC assessment because he found any impairments to be only mild, not moderate.").

[12] To be sure, the bulk of the ALJ's RFC discussion (Tr.1348-56) is focused on Plaintiff's physical impairments.  But the ALJ did expressly consider and discuss Plaintiff's mental impairments when assessing Plaintiff's RFC.  *See* Tr. 1349, 1350, 1354, 1356.  It also makes sense that the bulk of the ALJ's RFC discussion pertains to Plaintiff's physical (rather than mental) impairments.  After all, Plaintiff's hearing testimony overwhelmingly focused on Plaintiff's physical impairments and pain, and the record contains far more evidence regarding Plaintiff's physical impairments.  In other words, given the state of the record, one would expect that the ALJ's discussion regarding Plaintiff's physical impairments would be much lengthier than the ALJ's discussion regarding Plaintiff's mental impairments.  At any rate, the ALJ's decision shows that she did not ignore Plaintiff's mental impairments when assessing Plaintiff's RFC.  And it is precisely because the ALJ considered Plaintiff's mental impairments when assessing Plaintiff's RFC that this case is distinguishable from the cases on which Plaintiff primarily relies (*Schink* and *Arce v. Comm'r of Soc. Sec.*, No. 23-11315, 2024 WL 36061 (11th Cir. Jan. 3, 2024)).  *Cf. Jones v. Comm'r of Soc. Sec.*, No. 3:24-CV-406-DNF, 2025 WL 1728789, at *6 (M.D. Fla. June 23, 2025) ("Unlike *Arce* and *Schink*, the ALJ here specifically discussed Plaintiff's mental impairments in assessing the RFC."); *see also Aksyonov v. Comm'r of Soc. Sec. Admin.*, No. 23-CV-23203, 2024 WL 4210793, at *8-11 (S.D. Fla. Sept. 17, 2024).

be nonsevere (including in the RFC portion of the ALJ's decision) shows why the ALJ concluded that Plaintiff's RFC is not impacted by Plaintiff's mental impairments.  For the reasons discussed above, the ALJ's conclusion is supported by substantial evidence, and the ALJ applied the correct legal standards in assessing Plaintiff's claims.

## <u>CONCLUSION</u>

For the reasons discussed above, it is **ORDERED and ADJUDGED** that Plaintiff's Motion [DE 6] is **DENIED** and Defendant's Motion [DE 9] is **GRANTED**.  The Court will enter a separate Final Judgment **affirming** the final decision of the Commissioner.

**DONE AND ORDERED** in Fort Lauderdale, Florida on this 2nd day of September 2025.

**Jared M. Strauss**
**United States Magistrate Judge**